IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Randolph Coachman, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 07-G-1236-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Randolph Coachman, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Robert G. Faircloth, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.[1]  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairments (such as pain, fatigue or mental illness)

---

[1] This finding, however, is ambiguous.  In the body of his opinion, the ALJ stated: "As the claimant has no physical exertional limitations, there is nothing in the record to suggest that, absent polysubstance abuse/cocaine dependence, he would be unable to perform his past relevant work." [R 23]   Yet in the list of findings, number nine is as follows:  "Absent polysubstance abuse/cocaine dependence, the claimant can not perform past relevant work, but can perform other work at the light and sedentary levels." [R 24]

also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

## DISCUSSION

In the present case the plaintiff alleges he is unable to work because of severe back pain. He testified that his back pain prevents him from sitting or standing for more than 10 minutes at a time. He testified that he was unable to lift anything due to his back pain.

At the hearing the VE testified that the plaintiff had no skills transferable to work at the sedentary level. Therefore, based upon the plaintiff's age (50 years old at the time he filed his application), he would be disabled under the grids as of his fiftieth birthday if he were limited to sedentary work.[2] The ALJ recognized this, and stated at the hearing: "If Mr. Coachman is relegated to sedentary [work], I suppose, because of his age and education, he would be disabled under the grid rules...." [R 264] The ALJ asked the VE to explain what is meant by light work:

> Light work involves being on one's feet anywhere greater than two hours up to around six hours, during the shift, occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds.

---

[2] The Medical-Vocational Guidelines, (the "grids") found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

[R 264] Unless the ALJ's finding that the plaintiff is able to perform light work is supported by substantial evidence, he is disabled under the grids.

Included in the medical records is a billing statement from Gremmels Chiropractic, Inc. That bill shows the plaintiff began treatment on July 9, 2004. [R 110] The bill shows that x-rays were done and the plaintiff had a series of manipulation treatments between ending on July 30, 2004. There are no accompanying treatment records from Gremmels Chiropractic.

The plaintiff was seen in the UAB emergency room on September 30, 2004, complaining of back pain rated as a ten on a scale of one to ten. [R 112] There was no point tenderness over the cervical, thoracic or lumbar spine. [R 112] He was diagnosed with chronic back pain and given a prescription for Naprosyn and Flexeril. [R 112] The treatment note states that he had an MRI with him from August 19, 2004, and wanted a second opinion. [R 112]

On October 23, 2004, the plaintiff was seen by a Social Security Administration consultative examiner, who found no paravertebral muscle tenderness. He was unable to assess the plaintiff's lumbar range of motion because the plaintiff refused to do the maneuvers for bending over. [R 126] The examiner found the plaintiff was unrestricted in his ability to stand, walk or lift. [R 127] The consultative examiner did not have access to the plaintiff's medical records related to his back problems or to the MRI that was done in August 2004. [R 124]

On October 18, 2004, the plaintiff was seen at Cooper Green Hospital complaining of persistent back pain since a motor vehicle accident in July.  It was noted the plaintiff had pain and numbness in the right leg with a positive SLR on the right.[3]  [R 132]  He was referred to the Orthopedic Clinic and it was noted he had a copy of an MRI with him.  In the Orthopedic Clinic on that same date, he complained of numbness in the right leg and pain when lifting his right leg.  On examination, he was found to have a negative SLR test bilaterally.  [R 133]  He did, however, complain of numbness during the examination.  The diagnosis was right radicualar pain with complaints of numbness along the right L5 nerve root.  [R 133]  He was referred to the pain clinic for a series of three epidural steroid injections at the right L5 nerve root.  It was noted that if there was no relief after three steroid injections, he would be worked up for surgical intervention.  [R 133]  The pain block referral form dated October 20, 2004, indicated the reason for the referral was right L5 radiculopathy.  [R 134]  The pertinent physical findings listed were a negative SLR and the presence of radiculopathy.  No MRI findings were noted in the space provided for diagnostic studies.  [R 134]

On November 10, 2004, a pain block referral form from the Cooper Green pain clinic noted the results of the MRI: "Asymmetric disc bulge on [the right at the] L5-

---

[3] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint."  Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

S1 level extending into neural foramen."[4]  [R 131]  He was to have an epidural steroid injection ("ESI") on November 17, 2004.  [R 131]  On that date, a physical examination form states the plaintiff had his MRI at home, and he was to bring it from home for the first ESI.  [R 130]  However, the block was not performed and it was noted:  "Needs MRI report."  [R 129]

On March 1, 2005, the plaintiff was admitted to Cooper Green Hospital with depression and suicidal ideation.  [R 135]  His urine screen was positive for cocaine and marijuana.  [R 136]  He was transferred to the UAB hospital for psychiatric care.  He was discharged March 9, 2005.  During his hospital stay, he was given Lortab for back pain, but it was noted not to be the best drug for him in the future because of his drug abuse.  [R 141]

On April 22, 2005, Dr. John Buckingham, signed a UAB patient charity care application.  The form asks for "the major illness, injury, or condition that keeps the patient from working" and it was answered as follows:  "debilitating back pain."  [R 162]

On April 22, 2005, the plaintiff was seen at Cooper Green needing refills of his medications and rescheduling for ESIs.  [R 216]  His Lortab was refilled.  [R 216]  On June 2, 2005, he was seen at Cooper Green to began his series of three ESIs.  [R 215]

---

[4] The neural, or intervertebral foramen is "the passage formed by the inferior and superior notches on the pedicles of adjacent vertebrae; it transmits a spinal nerve and vessels."  Dorland's Illustrated Medical Dictionary 649 (28th Ed. 1994).

On July 22, 2005, he was seen at Cooper Green after his ESIs. The ESIs apparently did not relieve the plaintiff's pain and it was noted he needs a cane. [R 212] He was diagnosed with a herniated lumbar disc and was prescribed Lortab 7.5 and a cane. [R 212]

On November 14, 2005, the plaintiff was seen at Cooper Green by Dr. Wilson. [R 208] The plaintiff reported that he had been out of Lortab for two to three weeks. [R 208] It was noted that he got some benefit from his ESIs. He was complaining of right leg pain and right low back pain. [R 208] Examination revealed mild right tenderness in the back. [R 208] The treatment note indicates a pain scale rating of seven. [R 208] SLR was negative. Dr. Wilson stopped the plaintiff's Lortab prescription, and prescribed Neurontin and Feldene.

The plaintiff again saw Dr. Wilson on March 17, 2006. [R 207] The plaintiff reported he was still using cocaine. The plaintiff reported that he had filled one of the prescriptions he was given at his last visit. He complained of low back pain with radiation in the right leg. [R 207] Dr. Wilson found mild left lower lumbar tenderness on examination and SLR was negative. The plaintiff was noted to have increasing pain in the right hip with rotation. [R 207] The treatment note indicates a pain scale rating of eight. [R 207] Dr. Wilson again prescribed neurontin and Feldene and recommended a hip x-ray. [R 207]

On March 27, 2006, the plaintiff returned to Cooper Green complaining that his pain medicine was not helping him. [R 221] He requested requesting Lortab. [R 221] However, his request was refused and he was reminded of "his conversation [with] Dr. Wilson– No More Lortab." [R 221] The treatment note indicates a pain scale rating of nine. [R 221] He was not examined and was told to return for his next regularly scheduled appointment.

The above medical records, including treatment reports of an MRI, document that the plaintiff has a bulging disc intruding into the neural foramen. He has been prescribed ESIs and Lortab in an attempt to treat the resulting pain. One of his treating physicians prescribed a cane. He has consistently complained of severe pain to his treating physicians, and they have consistently prescribed pain medication and ESIs in an attempt to alleviate his pain. His treating orthopod indicated that if ESIs did not relieve the plaintiff's pain, surgery would be considered. Dr. Buckingham, at UAB, completed a form indicating the plaintiff was unable to work due to debilitating back pain.

Against this overwhelming treatment record, the ALJ relied upon a one time consultative examiner (who did not have access to the medical records relating to plaintiff's disc disease) to find the plaintiff has "no physical exertional limitations." [R 23] This finding is irrational and not based upon substantial evidence. There is no substantial evidence in the record that would allow a rational fact finder to conclude the

plaintiff had the physical exertional capacity for greater than sedentary work.  Therefore, he is disabled under the grid rules based upon his age and educational level.  The Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 24 January 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.